Luis Alberto PLATA, Appellant,

v.

The STATE of Texas, Appellee.

No. 0480–94.

Court of Criminal Appeals of Texas.

June 26, 1996.

Luis Alberto Plata, Lockhart, pro se.

Angel Castro, Brownsville, for appellant.

John A. Olson, Asst. Dist. Atty., Brownsville, Matthew Paul, State's Atty., Austin, for State.

*OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW*

MEYERS, Judge.

Appellant and a codefendant were convicted of theft in a single trial for stealing money from an armored cash delivery vehicle. Apparently, the money was actually taken and removed from the vehicle by appellant's codefendant, acting alone but using a car borrowed by appellant for that purpose from his sister earlier the same day. Although there is ample evidence to suggest that appellant participated in planning this offense, that he aided and possibly even solicited his codefendant to commit it, there is virtually nothing in the record to prove that appellant stole the money himself or actually received any of it after it was stolen.

Nevertheless, our law provides that "a person is criminally responsible for an offense committed by the conduct of another if ... acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense[.]" Penal Code § 7.02(a)(2). Because each party to an offense, including those who are criminally responsible for the conduct of others, may be charged with committing the offense themselves, it is clear that sufficient evidence was adduced at trial to prove appellant guilty of theft on account of the supervision he exercised and assistance he provided to his codefendant. Penal Code § 7.01. But, while the court's charge in this cause did tell the jurors in general terms of the conditions under which a person may be criminally responsible for another's conduct, it also expressly admonished them not to convict appellant unless they unanimously found beyond reasonable doubt that both he and his codefendant actually appropriated the stolen money by exercising control over it.

On the basis of these instructions, the Thirteenth Court of Appeals concluded that, taken as a whole, the court's charge did not authorize the jury to convict appellant for assisting his codefendant in the commission of the crime. Relying on our opinions in *Walker v. State,* 823 S.W.2d 247 (Tex.Crim. App.1991) and *Jones v. State,* 815 S.W.2d 667 (Tex.Crim.App.1991), the Court held that ju-

rors are not at liberty to convict an accused under an abstract theory of law contained in the court's charge unless the charge also includes an instruction applying that theory to the facts of the case and expressly authorizing the jury to return a verdict of guilty upon finding that the conditions of culpability given by the theory have been proven. Because the application paragraph of the trial court's charge in this case did not include, either directly or by reference, the elements necessary for proof that appellant was vicariously culpable, and because the evidence did not show that appellant committed the offense of theft by his own conduct, the Court of Appeals reversed his conviction and remanded the cause for an acquittal. *Plata v. State,* 875 S.W.2d 344 (Tex.App.—Corpus Christi 1994).

In its petition for discretionary review, the State argues that the Court of Appeals misinterpreted our opinions in *Walker* and *Jones* and that its disposition is inconsistent with our more recent opinion in *Chatman v. State,* 846 S.W.2d 329 (Tex.Crim.App.1993). It contends that the application paragraph in this case did include a reference to the abstract instruction on the law of vicarious culpability sufficient for rational jurors to understand that they were authorized to convict appellant upon finding that he was criminally responsible under the law for the alleged theft committed by the conduct of his codefendant. We granted discretionary review to clarify the connection under our precedents between definitional instructions and application instructions in the context of vicarious criminal responsibility.

Over the years, this Court has struggled to maintain a workable relationship between the abstract parts of a jury charge and those parts which apply the abstract law to the facts of the case. This struggle has not always been perfectly successful, but it has managed to produce a reasonably stable balance between two potentially inconsistent propositions: (1) that the meaning of a jury charge should be taken from the whole charge, not just from a certain few instructions read in isolation; and (2) that jurors are not authorized to return a verdict except under those conditions given by the application paragraph of the charge. To harmonize these two important principles, we have held that abstract or definitional paragraphs serve as a kind of glossary to help the jury understand the meaning of concepts and terms used in the application paragraphs of the charge. *See, e.g., Dinkins v. State,* 894 S.W.2d 330, 339 (Tex.Crim.App.1995)(omission of a culpable mental state from the application paragraph was sufficiently supplied by a definition of the offense given in the abstract portion of charge).

■ From this relationship, it follows that superfluous abstractions, those not necessary to an understanding of concepts or terms contained in the application paragraph, are generally innocuous. Reversible error only occurs in the giving of an abstract instruction when the instruction is an incorrect or misleading statement of a law which the jury must understand in order to implement the commands of the application paragraph. *Riley v. State,* 830 S.W.2d 584, (Tex.Crim.App.1992)(confusing conflict between abstract and application paragraphs on burden of proof concerning insanity was reversible error); *Sandig v. State,* 580 S.W.2d 584, 586 (Tex.Crim.App.1979)(overly broad definition of "sexual contact" in abstract instruction was reversible error because it authorized conviction on unalleged theory when read in combination with application paragraph of charge). Likewise, failure to give an abstract instruction is reversible only when such an instruction is necessary to a correct or complete understanding of concepts or terms in the application part of the charge. *MacDougall v. State,* 702 S.W.2d 650 (Tex.Crim.App.1986)(failure to include definition of "deception" in abstract portion of the charge was reversible error where State's theory of conviction depended on proof of theft by deception and elements of deception were not included in the application paragraph); *Meanes v. State,* 668 S.W.2d 366, 374–75 (Tex.Crim.App.1983)(failure to give abstract instruction defining capital murder was not error where constituent elements of murder were set forth at length in the application paragraph). The inclusion of a merely superfluous abstraction, therefore, never produces reversible error in the court's charge because it has no effect on the

jury's ability fairly and accurately to implement the commands of the application paragraph or paragraphs. *Hughes v. State*, 897 S.W.2d 285, 297 (Tex.Crim.App.1994)(no error in giving superfluous abstract instruction on causation when the issue of causation was not incorporated into the application paragraph); *Lewis v. State*, 815 S.W.2d 560, 562 (Tex.Crim.App.1991)(no error in giving superfluous abstract instruction on transferred intent when the issue of transferred intent was not incorporated into the application paragraph).

None of this law makes any sense unless every jury charge is required to contain at least one application paragraph, and every conviction not expressly authorized by an application paragraph is considered to be voidable. *See Williams v. State*, 547 S.W.2d 18, 20 (Tex.Crim.App.1977)("It is not sufficient for the jury to receive an abstract instruction on the law and then to render a verdict according to a general conclusion on whether the law has been violated.") Were we to ratify the State's position in this case, however, it would dramatically undermine these principles by holding that an abstract instruction on the law of parties which did not define or elaborate any concepts or terms in the application paragraph was itself available to the jury as an independent basis for convicting appellant.

■■■ In the instant cause, the only paragraph included in the court's charge which expressly described the conditions under which the jury should convict or acquit appellant was, with relevant parts emphasized, as follows.

*Now if you find from the evidence beyond a reasonable doubt that* on or about the 18th day of October, 1991, in Cameron County, Texas, the Defendants, *Eloy Hinojosa and Luis Alberto Plata, did unlawfully approriate [sic] United States Currency* without the effective consent of Felipe Landin, the owner, with intent to deprive the said owner of said property permanently, and that the value of such property was then and there twenty thousand dollars ($20,000.00) or more and under the value of one hundred thousand dollars ($100,000.00), *then you will find the defendants guilty of theft as charged in the indictment.*

*Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendants.*

Far from authorizing the conviction of either defendant for assisting the other to appropriate property, as the State suggests, this instruction rather plainly on its face directed the jurors to acquit both appellant and his codefendant unless they found that each actually appropriated the property himself. The court's charge then went on, several paragraphs later, to describe in the abstract, without authorizing the jury to convict or acquit, some of the statutory conditions under which one person may be criminally responsible for another person's conduct.

All persons are parties to an offense who are guilty of acting together in the commission of the offense. A person is criminally responsible as a party to an offense of the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or both.

A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. Mere presence alone will not constitute one a party to an offense.

This instruction clearly did not direct the jury to convict either the appellant or his codefendant under any specified conditions. It was merely a legal definition of vicarious culpability. Had the evidence in this case not supported submission of a parties issue to the jury at all, but the judge had nevertheless given the same abstract instruction as he actually did concerning the conditions under which a person may be criminally responsible for the conduct of another, this Court would have held that no reversible error had occurred, even though it was error to give the abstract instruction, because the application paragraph did not expressly authorize conviction on the theory that appellant was criminally responsible for another's conduct. We would have rationalized this result by observing that the application paragraph effectively

confined the jury's consideration to the issue of primary culpability, making it impossible for any rational juror mistakenly to think that a conviction was authorized under the theory of vicarious culpability contained in the abstract portion of the charge. Yet in the present context, where just such a superfluous charge was actually given, the State urges us to hold that it was rational for the jury to convict appellant as a culpable party on the basis of an abstract instruction not implemented by any authorization language whatsoever in the application paragraph, merely because the evidence supported conviction under such a theory. This is not an acceptable way to elaborate the law of jury charges in cases of vicarious culpability.

■ For many years we have uniformly insisted that the State may not support a jury verdict of guilty upon the theory that an accused was criminally responsible for an offense committed by the conduct of another person unless the court's charge specifically and adequately authorizes the jury to convict the accused upon that theory. As in other contexts, a charge is adequate for this purpose only if it either contains an application paragraph specifying all of the conditions to be met before a conviction under such theory is authorized, or contains an application paragraph authorizing a conviction under conditions specified by other paragraphs of the jury charge to which the application paragraph necessarily and unambiguously refers, or contains some logically consistent combination of such paragraphs. *See Jackson v. State*, 898 S.W.2d 896 (Tex.Crim.App.1995); *Chatman*, 846 S.W.2d 329; *Biggins v. State*, 824 S.W.2d 179 (Tex.Crim.App.1992); *Walker*, 823 S.W.2d 247; *Jones*, 815 S.W.2d 667; *Nickerson v. State*, 782 S.W.2d 887 (Tex.Crim.App.1990); *Scott v. State*, 768 S.W.2d 308 (Tex.Crim.App.1989); *Rico v. State*, 707 S.W.2d 549 (Tex.Crim.App.1983); *Jaycon v. State*, 651 S.W.2d 803 (Tex.Crim.App.1983); *Rasmussen v. State*, 608 S.W.2d 205 (Tex.Crim.App.1980); *Apodaca v. State*, 589 S.W.2d 696 (Tex.Crim.App.1979); *Romo v. State*, 568 S.W.2d 298 (Tex.Crim.App.1977). The opinion of the Thirteenth Court of Appeals in the instant cause seems to have understood these principles perfectly and to have implemented them in a straightforward

manner acceptable to our controlling precedents. The State's contention that the lower court misinterpreted these precedents is, therefore, not borne out by our reading of its opinion.

It is, of course, true that intelligent humans can often reach reliable conclusions about questions of fact when given only the most general rules to work with. For this reason, it may well be that application paragraphs are an anachronism, and that jurors could perform just as well without them. But until the law dispenses altogether with the need for such instructions, a result advocated by neither party in the present context, the courts of appeals are obliged to strike down any convictions not actually authorized by an application paragraph of the trial court's charge to the jury. Because the application paragraph given by the trial court in the instant cause clearly did not authorize, either directly or by reference, conviction of appellant for an offense committed by the conduct of his codefendant, and because the evidence was insufficient to convict appellant for an offense committed by his own conduct, the judgment of the Thirteenth Court of Appeals is affirmed.

MANSFIELD, J. dissents.

## DISSENTING OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

KELLER, Judge, dissenting.

I disagree with the majority for a number of reasons. Primarily, though, I believe that the law of parties is, at most, a definitional matter, sufficient if included in the abstract portion of the court's charge.

### 1. Do we even need a parties instruction?

It appears to me first, though, that it may be unnecessary to instruct the jury about the law of parties at all. In 1974 the Legislature enacted Sec. 7.01 of the Penal Code, subsection (c) of which provides:

All traditional distinctions between accomplices and principals are abolished by this section, and each party to an offense may be charged and convicted without alleging that he acted as a principal or accomplice.

We held that this statute plainly meant that an indictment need not allege that a person is accused as a principal or as a party. *Pitts v. State*, 569 S.W.2d 898 (Tex.Crim.App. 1978). All indictments, therefore, in explicitly alleging "personal" liability for an offense, also implicitly allege party liability.

Sec. 7.01(c) treats "charging" an offense the same as it treats "convicting" of an offense—it allows both without an allegation that the accused acted as a party or as a principal. I do not see how an accused can be "convicted without alleging that he acted as a principal or accomplice" if we require that the distinction be made somewhere down the line. It seems plain to me that the law does not require that such a distinction be made in the jury charge. Just as an indictment which alleges personal liability includes an allegation of party liability, a jury charge which allows conviction for personal liability should allow conviction for party liability.

The application paragraph of the charge in this case tracked the language of the indictment. The jury therefore found beyond a reasonable doubt that appellant had committed the exact acts alleged in the indictment. I can think of no other circumstances in which an accused is entitled to be acquitted after a jury finds that he committed acts exactly as alleged in a valid charging instrument.

**2. If we need a parties instruction, must it be in the application paragraph?**

Moreover, even if it is necessary to inform the jury in some way of the law of parties, the charge in this case did so in the abstract portion. Sufficiency of the evidence is to be measured against the jury charge, which we have interpreted to mean the entire charge. *Garrett v. State*, 749 S.W.2d 784, 802 (Tex. Crim.App.1986) In all jury charges, we define terms in the abstract portion of a charge in order to allow the jury to incorporate the definitions into the application paragraph.

The definition of "appropriate," for instance, appears in the abstract portion of a charge; we do not require that the definition be repeated in the application portion. Similarly, a definition of criminal responsibility sufficiently informs the jury of the law even if it is included only in the abstract portion. It is true that neither the word "parties" nor the term "criminal responsibility" appears in the application paragraph. Nevertheless, the jury in this case was fully informed, via the jury charge, of what the law says regarding liability for an offense. It defies common sense to conclude that the jury did not understand exactly what was required in order for them to find appellant guilty.

**3. The defendant benefits if the charge does not contain a parties instruction: so, why should he be permitted to complain on appeal when he did not complain at trial?**

Furthermore, it is to the State's benefit, rather than the defendant's, that the law of parties be explained to the jury. If the State manages to get a conviction without laying out the law of parties in the application paragraph, why should a defendant benefit? If he has been indicted without reference to party liability and the evidence supports the allegations in the indictment, I do not see why he is entitled to an acquittal.

Normally, a party is not permitted to lie behind the log, fail to object, and reap the benefit by complaining for the first time on appeal.[1] The situation in the present case allows a defendant to do that, and worse. A defendant who does not object to an instruction such as the one in the present case stands to benefit at trial if the jury does not incorporate the definition of criminal responsibility into the application paragraph. If the jurors believe that the application paragraph requires that the accused personally committed the illegal act, he gets an acquittal on the basis of the lack of a parties charge. But then if the jury does not acquit him he is automatically entitled to an acquittal when he

---

1. If, instead of seeking an acquittal, appellant had complained of jury charge error, we would have required a showing of "egregious harm." *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App. 1984). Although *Almanza* does not apply to suf-

ficiency claims, it seems to me that the concerns prompting an "egregious harm" rule to unobjected to charge error apply equally to the issue confronted in the present case.

appeals his conviction. There is something wrong with allowing an accused to position himself for an acquittal at trial by failing to object, and then to guarantee an acquittal on appeal by the same failure. If a defendant wishes to gain the chance of an acquittal in this way at trial, he should not be able to complain later that the evidence is insufficient.

The majority fears that ratifying the State's position in this case would dramatically undermine the general principles of law relating to jury charges. This just is not so. The principles I advance today apply only in the framework of principal and accomplice liability, because it is only in that context that the legislature has enacted a statute whereby a straightforward principal-liability indictment also always charges party liability. My proposal would not affect at all the cases the majority cites that involve issues other than party liability.

### 4. Nevertheless, the evidence is sufficient to find appellant guilty as a principal.

Furthermore, even if we are to continue to make this obsolete distinction between principals and accomplices, I would hold that the evidence in this case is sufficient to support a finding of guilty "as a principal." The Court of Appeals' opinion states:

> [W]e must determine if the evidence is sufficient to find appellant guilty by his own conduct *without regard* to any solicitation, encouragement, direction, aid, or attempted aid he may have given to his co-defendant, Hinojosa.

(Emphasis added.) I believe that this is an incorrect statement of the law.

A person commits "theft" if he "unlawfully appropriates property with intent to deprive the owner of property." Texas Penal Code § 31.03(a). "Appropriate" means, among other things, "to acquire or otherwise exercise control over property other than real property." Texas Penal Code § 31.02(5)(1993)[now (4)]. Appropriation of property is "unlawful" if "the property is stolen and the actor appropriates the proper-

ty knowing it was stolen by another." Texas Penal Code § 31.03(b)(2). Hence, appellant would be guilty of theft as a *principal* if he exercised control over property—knowing that the property was stolen by another—with the intent to deprive the owner.

Although the Court of Appeals did not address sufficiency of the evidence to support appellant's guilt as a party we may reasonably assume that, had it done so, it would have held the evidence sufficient. The evidence to establish party liability consists of testimony that appellant: planned a theft from an armored car with Hinojosa, followed an armored car for months to become familiar with the route, had been employed with an armored car company, had a key to an armored car, actually committed a theft from an armored car but mistakenly stole a bag full of stamped food stamps, said he would use his sister's car to commit the theft (it was the car used), expected to get something like hundreds of thousands of dollars from the theft, thought it worth the risk of dying to commit the theft, had no job, said he was not a type of person to live off a weekly paycheck, was in debt, had people "after him" because of the money he owed, was seen with a sack of money within two hours of the theft, bought his wife a car and a thousand-dollar necklace with money he said he had stolen in armored car theft,[2] and had, a week before the armored car theft, persuaded his girlfriend to give him the key to the store where she worked in order to (as he did) burglarize that location. There was also testimony that $35,000 had been stolen from the armored car, and that the locked door to the car did not appear to have been forced.

None of this testimony was considered by the Court of Appeals in its sufficiency analysis. It should have been, because whatever evidence supports the theory of "party liability" also supports, to some extent, a conclusion that appellant exercised control over property knowing it to be stolen and with the intent to deprive the owner of the property, i.e., was liable as a principal actor. The above evidence establishes sufficiently that appellant participated with Hinojosa in planning an armored car theft and that Hinojosa

---

2. It is unclear whether this money came from a     previous armored car theft.

committed an armored car theft, per that plan, in which $35,000 was stolen. A reasonable jury could conclude that appellant's possession of a sack of money within two hours of the theft established that he exercised control over property knowing it to be stolen and with the intent to deprive the owner. The *only* question of sufficiency, in my mind, is as to whether the jury could reasonably conclude that the amount over which appellant exercised control was $20,000 or more. Because "exercise control" is a broader term than "possess," I would hold that the evidence is sufficient.

For the above reasons, I would reverse the judgment of the Court of Appeals and affirm the conviction.

McCORMICK, P.J. and WHITE, J., join.