ACCEPTED
06-17-00229-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
5/15/2018 8:51 AM
DEBBIE AUTREY
CLERK

**No. 06-17-0229-CR**

IN THE SIXTH COURT OF APPEALS

at TEXARKANA

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
5/15/2018 8:51:57 AM
DEBBIE AUTREY
Clerk

_____

**ANTHONY WILSON, JR.,**

*Appellant*

vs.

**STATE OF TEXAS,**

*Appellee*

_____

Appeal from the 102nd District Court
of Bowie County, Texas

_____

**APPELLANT'S BRIEF**

_____

Troy Hornsby

*Miller, James, Miller & Hornsby, L.L.P.*
1725 Galleria Oaks Drive
Texarkana, Texas 75503
troy.hornsby@gmail.com
903.794.2711, f. 903.792.1276

Attorney for Appellant
Anthony Wilson, Jr.

**Oral Argument Requested**

## IDENTITY OF PARTIES AND COUNSEL

Pursuant to Texas Rule of Appellate Procedure 38.1(a), the following is a complete list of all parties to the trial court's judgment and the names and addresses of all trial and appellate counsel:

| **Appellant** | **Appellant's appellate counsel** |
|---|---|
| Anthony Wilson, Jr. | Troy Hornsby<br>*Miller, James, Miller, & Hornsby, LLP*<br>1725 Galleria Oaks Drive<br>Texarkana, Texas 75503 |
| | **Appellant's trial counsel** |
| | Derric McFarland<br>*McFarland Law Office*<br>P.O. Box 1048<br>Texarkana, Texas 75504-1048 |
| **Appellee** | **Appellee's appellate counsel** |
| State of Texas | Kelley Crisp<br>Bowie County District Attorney's Office<br>601 Main Street<br>Texarkana, Texas 75501 |
| | **Appellee's trial counsel** |
| | J. Randle Smolarz<br>Bowie County District Attorney's Office<br>601 Main Street<br>Texarkana, Texas 75501 |

# TABLE OF CONTENTS

Identity of Parties and Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Index of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Issue Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Statement of Oral Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

> **Sole Issue:** The guilt-innocence jury charge was fundamentally defective because it directed the jury to find Wilson guilty of capital murder based upon an underlying felony murder, rather than an underlying (regular) murder, for which he was indicted. . . . 12
>
> Preservation of Error . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**
>
> Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
>
> Law and Application . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
>
> Harmful Error . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
>
> Prayer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## INDEX OF AUTHORITIES

**CASES:**                                                                                 **PAGE**

*Allen v. State*,
253 S.W.3d 260, 264 (Tex. Crim. App. 2008) . . . . . . . . . . . . . . . . . . . . . . . . 17

*Almanza v. State*,
686 S.W.2d 157 (Tex Crim. App. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13,17

*Brumit v. State*,
206 S.W.3d 639 (Tex. Crim. App. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Druery v. State*,
225 S.W.3d 491, 504 (Tex. Crim. App. 2007) . . . . . . . . . . . . . . . . . . . . . . . . 17

*Garcia v. State*,
149 S.W.3d 135, 144 (Tex. Crim. App. 2004) . . . . . . . . . . . . . . . . . . . . . . . . 13

*Hutch v. State*,
922 S.W.2d 166, 172 (Tex. Crim. App. 1996) . . . . . . . . . . . . . . . . . . . . . . . . 17

*King v. State*,
953 S.W.2d 266 (Tex. Crim. App. 1997) . . . . . . . . . . . . . . . . . . . . . . . . 16-17

*Malik v. State*,
953 S.W.2d 234 (Tex. Crim. App. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Marin v. State*,
851 S.W.2d 275 (Tex. Crim. App. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Medina v. State*,
7 S.W.3d 633, 640 (Tex. Crim. App. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Ngo v. State*,
175 S.W.3d 738, 743 (Tex. Crim. App. 2005) . . . . . . . . . . . . . . . . . . . . . . . . 13

*Plata v. State*,
926 S.W.2d 300, 302 (Tex. Crim. App. 1996) . . . . . . . . . . . . . . . . . . . . . . . . 13

*Reeves v. State*,
420 S.W.3d 812, 818 (Tex. Crim. App. 2013) . . . . . . . . . . . . . . . . . . . . . . . . 14

*Selvage v. State*,
    680 S.W.2d 17, 20 (Tex. Crim. App. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

*Starks v. State*,
    127 S.W.3d 127, 133 (Tex. App.—Houston [1st Dist.] 2003, pet. dism'd) . .  12

*Swearingen v. State*,
    270 S.W.3d 804, 808 (Tex. App.—Austin 2008, pet. ref'd) . . . . . . . . . . . . . .  14

**STATUTES/RULES:**

Tex. Code Crim. Proc. Ann. art. 36.14 (West 2007) . . . . . . . . . . . . . . . . . . . . . . . .  14

Tex. R. App. P. 33.1(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

Tex. R. App. P. 44.2(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16,17

Tex. Pen. Code Ann. § 19.02 (West 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

Tex. Pen. Code Ann. § 19.03 (West Supp. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . .  15

## STATEMENT OF THE CASE

*Nature of case:*        This is an appeal from a conviction for capital murder in violation of Texas Penal Code section 19.03. (CR 130).

*Judge/Court:*        Judge Bobby Lockhart in the 102nd District Court of Bowie County, Texas. (CR 130).

*Pleas*:        Anthony Wilson, Jr. (Wilson) entered a plea of "not guilty" to the charge against him. (RR 20:11)(CR 130).

*Trial disposition:*        The jury found Wilson guilty. (CR 90). Additionally, the jury found both the enhancement allegations true. (CR 94,96). The Court adjudicated Wilson guilty. (CR 127,130). The trial court sentenced Wilson to life without parole. (CR 130).

## ISSUE PRESENTED

**Sole Issue:** The guilt-innocence jury charge was fundamentally defective because it directed the jury to find Wilson guilty of capital murder based upon an underlying felony murder, rather than an underlying (regular) murder, for which he was indicted.

**STATEMENT OF ORAL ARGUMENT**

Oral argument might assist the court in determining whether the error contained in the guilt-innocence charge was egregious in light of the legal theories presented and the evidence at trial.

## STATEMENT OF FACTS

The State contends that four young men, Marshall Vallejos and his half-brother, Jaquelle Rogers, Jailon Gamble, and the Defendant, Anthony Wilson were driving around Texarkana in Gamble's vehicle and smoking marijuana. (RR 20:111,207,211-212;21:18-19). Wilson possessed a .380 handgun. (RR 20:214). They stopped and obtained an additional revolver handgun. (RR 21:20-22). Wilson saw the victim drive by in a vehicle with large rims. (RR 21:23). Wilson instructed the driver, Gamble, to follow the victim's vehicle, saying the victim had money. (RR 20:213,216-217;21:24,27). They followed the victim to a Dollar Store. (RR 20:217;21:24,84). There, Vallejos and Rogers exited the vehicle to rob the victim. (RR 20:219-221; 21:25). However, Vallejos encountered his mother and aborted the robbery attempt. (RR 20:221;21:84). Regardless, they followed the victim to an area across the street where the victim stopped his car to wait for his children to get off a school bus. (RR 20:222-225). Vallejos, Rogers and Wilson exited their vehicle. (RR 20:226;21:29). Wilson and Vallejos were both armed. (RR 21:37). Wilson approached the victim's passenger side window to ask for a lighter for his marijuana cigarette, while Vallejos approached the driver's side window. (RR 20:222-226). Wilson leaned in the passenger's side window and shot the victim four times. (RR 20:124,208). Wilson left the marijuana cigarette in the vehicle. (RR 20:71). The victim exited his vehicle and was shot again by Vallejos who fired twice. (RR 20:129,208). The victim was shot a total of six times, (RR 20:106), causing eight wounds. (RR 20:139). The victim died as a result. (RR 20:161). During the attack, Wilson also shot Vallejos in his knee. (RR

9

20:108,131; 21:33,73).

It is undisputed that Vallejos was arrested at Wadley hospital where he was being treated for the gunshot wound to his knee. (RR 20:230-231). Gamble turned himself in to police. (RR 21:16). Rogers turned himself in to police. (RR 21:78,39). Finally, Wilson was apprehended in Tennessee. (RR 21:68,80).

## SUMMARY OF THE ARGUMENT

**Sole Issue:** The guilt-innocence jury charge was fundamentally defective because it directed the jury to find Wilson guilty of capital murder based upon an underlying felony murder, rather than an underlying (regular) murder, for which he was indicted.

Although the guilt-innocence charge contained definitions of capital murder, felony murder and robbery, it did not include a definition of (regular) murder. This is error because the charge left the jury with the impression Wilson could be convicted of capital murder based upon an underlying felony murder, rather than an underlying (regular) murder for which Wilson was indicted. Such error was egregious fundamental error because whether Wilson was guilty of an underlying (regular) murder, or just felony murder was really the only potential fact issue.

**Sole Issue:** The guilt-innocence jury charge was fundamentally defective because it directed the jury to find Wilson guilty of capital murder based upon an underlying felony murder, rather than an underlying (regular) murder, for which he was indicted.

Although the guilt-innocence charge contained definitions of capital murder, felony murder and robbery, it did not include a definition of (regular) murder. This is error because the charge left the jury with the impression Wilson could be convicted of capital murder based upon an underlying felony murder, rather than an underlying (regular) murder for which Wilson was indicted. Such error was egregious fundamental error because whether Wilson was guilty of an underlying (regular) murder, or just felony murder was really the only potential fact issue.

## Preservation of Error

To preserve a complaint for appellate review, a party must generally have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if they are not apparent from the context of the request, objection, or motion. *See* Tex. R. App. P. 33.1(a). More specifically, to preserve error relating to a jury charge, there must either be an objection or a requested charge. *Starks v. State*, 127 S.W.3d 127, 133 (Tex. App.—Houston [1st Dist.] 2003, pet. dism'd). Here, there was no objection to the jury charge.

However, error which is based upon an absolute right or prohibition need not be preserved. *Marin v. State*, 851 S.W.2d 275 (Tex. Crim. App. 1993)(discussing three

12

types of rights); *see also Garcia v. State*, 149 S.W.3d 135, 144 (Tex. Crim. App. 2004). Such error is often called fundamental error. *See e.g. Brumit v. State*, 206 S.W.3d 639 (Tex. Crim. App. 2006). Jury charge error rises to the level of fundamental error only if the charge contains error resulting in egregious harm. *See Almanza v. State*, 686 S.W.2d 157 (Tex Crim. App. 1985). Accordingly, with regard to fundamental charge error the issues of preservation, the standard of review and harm analysis are all tied together into a single analysis. *See Almanza v. State*, 686 S.W.2d 157 (Tex Crim. App. 1985). As argued below under the "Harmful Error" section, this error was egregious and, therefore, fundamental error.

### Standard of Review

The standard of review for charge error was established in *Almanza. Almanza v. State*, 686 S.W.2d 157 (Tex Crim. App. 1985). Such review is *de novo. Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985). Review is not limited to just one part of the charge standing alone. *Selvage v. State*, 680 S.W.2d 17, 20 (Tex. Crim. App. 1984). The meaning of a jury charge "should be taken from the whole charge, not just from a certain few instructions read in isolation." *Plata v. State*, 926 S.W.2d 300, 302 (Tex. Crim. App. 1996), *overruled on other grounds by Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997). In determining whether the inclusion of a theory unsupported by the evidence in the charge is reversible error, an appellate court should review alleged jury-charge error in two steps: first, it should determine whether error exists; if error exists, it should then review for harm. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim.

13

App. 2005); *Swearingen v. State*,270 S.W.3d 804, 808 (Tex. App.—Austin 2008, pet. ref'd).

## Law and Application

Although the guilt-innocence charge contained definitions of capital murder, felony murder and robbery, it did not include a definition of (regular) murder. This is error because the charge left the jury with the impression Wilson could be convicted of capital murder based upon an underlying felony murder, rather than an underlying (regular) murder for which Wilson was indicted. Such error was egregious fundamental error because whether Wilson was guilty of an underlying (regular) murder, or just felony murder was really the only potential fact issue.

The court must provide the jury with a written charge that sets forth the law applicable to the case. *See* Tex. Code Crim. Proc. Ann. art. 36.14 (West 2007); *Reeves v. State*, 420 S.W.3d 812, 818 (Tex. Crim. App. 2013). Wilson was indicted with two offenses. Count 1 was an allegation of capital murder, based upon an underlying (regular) murder during the course of robbery. (CR 31). Count 2 was an allegation of felony murder, based upon a death during the course of a robbery. (CR 31).

Here, the guilt-innocence charge, in section 1, legally defined the offenses involved. (CR 120). It specifically read as follows:

> Our law provides that a person commits the offense of murder if commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.
> Our law provides that murder, however, is capital murder when

14

> the person intentionally commits the murder in the course of committing or attempting to commit the offense of robbery.
>     Our law provides that a person commits the offense of robbery if, in the course of committing theft and with intent to obtain and maintain control of property of another, he intentionally or knowingly causes bodily injury to another.

(CR 120).

Thus, in the first sentence of section 1, the guilt-innocence charge defined felony murder, as alleged in Count 2 of the indictment. Additionally, in the third sentence of section 1, the guilt-innocence charge defined robbery which was an underlying felony required for capital murder. Finally, in the second sentence of section 1, the guilt-innocence charge defined capital murder pursuant to Texas Family Code section 19.03. However, that definition of capital murder summarily referenced (regular) murder. (CR 120); *see also* Tex. Pen. Code Ann. § 19.03 (West Supp. 2016). Murder is legally defined as "intentionally or knowingly causes the death of an individual." Tex. Pen. Code Ann. § 19.02 (West 2011). However, the definition of (regular) murder was not included in the definition of capital murder or generally in the definition section of the guilt-innocence charge.

Thus, reading the charge definitions as a whole leaves the jury with the incorrect elements of the offense as Wilson was indicted. That is to say, Wilson was indicted in Count 1 for capital murder, based upon an underlying (regular) murder during the course of robbery. (CR 31). However, reading the definitions portion of the charge, the jury was left with the impression that Wilson is guilty of capital murder if he committed murder during the course of robbery, based upon sentence two of section 1. The jury would then conclude that the murder underlying the

15

capital murder is defined directly above in the first sentence of section 1 as follows:

> Our law provides that a person commits the offense of murder if commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.

(CR 120).

The application portion of the guilt-innocence charge was correct. Such a fact does not correct an error in the charge, although it does mitigate against a finding that error in the abstract portion of the jury charge was egregious. *See Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999).

Therefore, murder, which is a required element of capital murder in this case as Wilson was indicted, was omitted from the definitions section of the guilt-innocence charge. Accordingly, reading the guilt-innocence jury charge as a whole, the jury would have concluded that they should find Wilson guilty of capital murder if they found that Wilson committed felony murder during the course of robbery. However, the indictment alleged that Wilson had committed capital murder based upon (regular) murder during the course of robbery. Accordingly, error exists in the charge and the first step in the charge-error analysis is satisfied.

### Harmful Error

An error must affect the substantial rights of the accused to be harmful. *See* Tex. R. App. P. 44.2(b). A "substantial right" is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v.*

16

*State*, 953 S.W.2d 266 (Tex. Crim. App. 1997) (citing Tex. R. App. P. 44.2(b)). However, when arguing fundamental error in a criminal charge, the standard harmful error analysis is inapplicable. *See Almanza v. State*, 686 S.W.2d 157 (Tex Crim. App. 1985).

If the error is not properly preserved in a criminal charge, then a showing of egregious harm is required for reversal. *Id.* Errors resulting in egregious harm are those that affect the "[v]ery basis of the case, those depriving the defendant of a valuable right, or those that vitally affect a defensive theory." *Druery v. State*, 225 S.W.3d 491, 504 (Tex. Crim. App. 2007). "Egregious harm is a difficult standard to prove and such a determination must be done on a case-by-case basis." *Hutch v. State,* 922 S.W.2d 166, 172 (Tex. Crim. App. 1996). The appellate court should consider (1) the entire jury charge, (2) the state of the evidence, including the contested issues and the weight of the probative evidence, (3) the parties' arguments, and (4) any other relevant information revealed by the record of the trial as a whole. *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App.2008).

As discussed above, the definitions portion of the charge contained definitions of felony murder, capital murder and robbery. However, the charge omitted a definition of (regular) murder, which was error. Additionally, such error was egregious because reading the charge as a whole left the jury with the incorrect impression that Wilson could have been guilty of capital murder, based upon committing an act dangerous to human life during the course of robbery, rather than murder in the course of robbery.

The guilt-innocence charge, in section 1, legally defined the offenses involved. (CR 120). It specifically read as follows:

> Our law provides that a person commits the offense of murder if commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.
> Our law provides that murder, however, is capital murder when the person intentionally commits the murder in the course of committing or attempting to commit the offense of robbery.
> Our law provides that a person commits the offense of robbery if, in the course of committing theft and with intent to obtain and maintain control of property of another, he intentionally or knowingly causes bodily injury to another.

(CR 120). Thus, the definition of murder was omitted after the first paragraph and before the second paragraph. The second paragraph defines capital murder as including murder. The first paragraph defines felony murder. Accordingly, reading the charge as a whole, the jury is left with the incorrect impression capital murder can be based upon an underlying felony murder.

The harm of the error in charge in this case was particularly significant in light of the facts of this case. That is, there was strong evidence that the victim was killed during the course of a planned robbery. However, there was no evidence of any prior intent to murder the victim.

Here, two of the four actors testified at trial. (RR 20:203(Rogers) 21:11(Gamble)). Their testimony was supported by several witnesses corroborating portions of their testimony. Together, this evidence established the storyline.

Four young men, Marshall Vallejos and his half-brother, Jaquelle Rogers, Jailon Gamble, and the Defendant, Anthony Wilson were driving around Texarkana in

18

Gamble's vehicle and smoking marijuana. (RR 20:111,207,211-212;21:18-19). Wilson possessed a .380 handgun. (RR 20:214). They stopped and obtained an additional revolver handgun. (RR 21:20-22). Wilson saw the victim drive by in a vehicle with large rims. (RR 21:23). Wilson instructed the driver, Gamble, to follow the victim's vehicle, saying the victim had money. (RR 20:213,216-217;21:24,27). They followed the victim to a Dollar Store. (RR 20:217;21:24,84). There, Vallejos and Rogers exited the vehicle to rob the victim. (RR 20:219-221; 21:25). However, Vallejos encountered his mother and aborted the robbery attempt. (RR 20:221;21:84). Regardless, they followed the victim to an area across the street where the victim stopped his car to wait for his children to get off a school bus. (RR 20:222-225). Vallejos, Rogers and Wilson exited their vehicle. (RR 20:226;21:29). Wilson and Vallejos were both armed. (RR 21:37). Wilson approached the victim's passenger side window to ask for a lighter for his marijuana cigarette, while Vallejos approached the driver's side window. (RR 20:222-226). Wilson leaned in the passenger's side window and shot the victim four times. (RR 20:124,208). Wilson left the marijuana cigarette in the vehicle. (RR 20:71). The victim exited his vehicle and was shot again by Vallejos who fired twice. (RR 20:129,208). The victim was shot a total of six times, (RR 20:106), causing eight wounds. (RR 20:139). The victim died as a result. (RR 20:161). During the attack, Wilson also shot Vallejos in his knee. (RR 20:108,131; 21:33,73).

Thus, there was substantial evidence that the four actors were present at the scene of the crime, that two were armed with handguns and that there was intent to rob the victim. However, there was no evidence of any intent to murder the victim.

19

Thus, there was strong evidence of felony murder, but very weak, if any, evidence of murder, with its heightened intent requirement. As such, the underlying facts play perfectly into the charge error. It is entirely possible that, based upon the definitions error in the charge, the jury incorrectly believed that felony murder could support a finding of capital murder. Such error could have a determinative result in light of this culpability fact issue.

Admittedly, the application portion of the charge is correct. It reads as follows:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 29th day of March, 2016, in Bowie County, Texas, the defendant, ANTHONY WILSON, JR., did then and there, intentionally cause the death of an individual, CASEY SMITH, by shooting CASEY SMITH with a gun, and the defendant, ANTHONY WILSON, JR. was then and there in the course of committing or attempting to commit the offense of robbery, then you will find the defendant guilty of Capital Murder as charged in the indictment.

(CR 123). This could have mitigated the harm of the incorrect definition, but was insufficient to overcome the particularized harm in this case.

## PRAYER

WHEREFORE, premises considered, Anthony Wilson, Jr. respectfully requests that this conviction be reversed and judgment rendered in his favor, that the conviction be reversed and a new trial granted, or for such other and further relief to which Appellant may be entitled.

Respectfully Submitted,

*Miller, James, Miller & Hornsby, L.L.P.*

By: _____
Troy Hornsby
Texas Bar Number 00790919

1725 Galleria Oaks Drive
Texarkana, Texas 75503
troy.hornsby@gmail.com
903.794.2711, f. 903.792.1276

Attorney for Appellant Anthony Wilson, Jr.

21

## CERTIFICATE OF SERVICE

This is to certify that on May 15, 2018, a true and correct copy of the above and foregoing *Appellant's Brief* has been forwarded by U.S. mail on all counsel of record and interested party listed below:

**State's Attorney**
Kelley Crisp
Bowie County Dist. Attorney's Office
601 Main Street
Texarkana, Texas 75501

**Trial Court Judge**
Honorable Bobby Lockhart
102nd District Court
100 N. State Line Ave.
Texarkana, Texas 75501

**Appellant**
Anthony Wilson, Jr.
TDC #02174331
Allred Unit
2101 FM 369 N.
Iowa Park, Texas 76367

**Defendant's Trial Attorney**
Derric S. McFarland
*McFarland Law Office*
P.O. Box 1048
Texarkana, Texas 75504-1048

_____
Troy Hornsby

**CERTIFICATE OF COMPLIANCE**

Pursuant to Texas Rule of Appellate Procedure 9.4, the undersigned counsel certifies that, exclusive of the exempted portions in Texas Rule of Appellate Procedure 9.4(i)(1), this brief contains 2,595 words (less than 15,000), based upon the word count of the WordPerfect program used to prepare the document.

Troy Hornsby